**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**EMMA LOU GILLIAM,**

     **Plaintiff,**

**vs.**                            **CIVIL ACTION NO. 2:17-CV-00603**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security which denied the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered January 17, 2017 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-briefs in support of the Judgment on the Pleadings. (Document Nos. 13 and 14.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 13.), **GRANT** Defendant's request to affirm the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision of the Commissioner (Document No. 14.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

## Procedural History

The Plaintiff, Emma Lou Gilliam (hereinafter referred to as "Claimant"), protectively filed her application for Title II benefits on November 10, 2013, alleging disability since October 2, 2013 due to "progressive neuropathy, depression, narcolepsy, sleep apnea, border stenosis, back injury, leg pain, back/leg weakness, high cholesterol, osteoarthritis, and restless leg syndrome.[2] (Tr. at 159-160, 175.) Her claim was initially denied on February 24, 2014 (Tr. at 80.) and again upon reconsideration on April 27, 2014. (Tr. at 97-101.) Thereafter, Claimant filed a written request for hearing on May 29, 2014. (Tr. at 107-108.) An administrative hearing was held on November 9, 2015 before the Honorable Sabrina M. Tilley, Administrative Law Judge ("ALJ") (Tr. at 32-66.) On December 28, 2015, the ALJ entered an unfavorable decision finding Claimant was not disabled. (Tr. at 14-31.) On February 23, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 12-13, 262-264.) The ALJ's decision became the final decision of the Commissioner on November 16, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6.) On January 16, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 7 and 8.) Subsequently, Claimant filed a

---

[2] In her Disability Report – Appeal, submitted on March 10, 2014, Claimant alleged that since her last Disability Report dated November 15, 2013, she alleged that her conditions were worse, that she was becoming more "forgetful" and that she had a cyst on her right kidney. (Tr. at 210.) In a subsequent Disability Report – Appeal, submitted on June 3, 2014, she asserted that her "neck and right shoulder pain is worse and arthritis is hurting worse. One side of the body will be hot and one side will be cold." (Tr. at 231.) Claimant further stated that her neck pain is severe, going "down the neck and right shoulder, and it bothers the right arm and sharp pain in the back." (Tr. at 232.)

Memorandum in Support of Judgment on the Pleadings (Document No. 13.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 14.) Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was born on February 16, 1955, and defined as a "person of advanced age" throughout these proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 159.) Claimant has at least a high school education and completed specialized training in nursing school. (Tr. at 176.) Claimant was an LPN Charge Nurse providing long-term care for patients with Alzheimer's and dementia for nearly twenty years before she worked for over two years as a Medical Data System Nurse, collecting money for Medicare, and interviewing patients. (Tr. at 38, 176-177.) The primary reason Claimant stopped working was due to ongoing back pain. (Tr. at 39, 64-65.)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any

of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. <u>Id</u>. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. <u>Id</u>. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. <u>Id</u>. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

**<u>Summary of ALJ's Decision</u>**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2018. (Tr. at 19, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since October 2, 2013, the alleged onset date. (<u>Id</u>., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: obesity and degenerative disc disease. (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that the severity of Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to

lift and carry 20 pounds occasionally, and 10 pounds frequently, stand and walk 2

> hours in an 8-hour day and sit at least 6 hours in an 8-hour day. She can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can tolerate occasional exposure to extreme heat, extreme cold, vibrations, loud noise, and hazards such as unprotected heights and moving machinery.

(Id., Finding No. 5.) At step four, the ALJ found that Claimant was capable of performing her past relevant work as a Medicare Benefits Specialist (MBS) and that this work did not require the performance of work-related activities precluded by her RFC. (Tr. at 25, Finding No. 6.) Finally, the ALJ determined Claimant had not been under a disability from October 2, 2013 through the date of the decision. (Id., Finding No. 7.)

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts two grounds in support of her appeal: first, the ALJ failed to evaluate the severity of her radiculitis; and second, the ALJ's pain analysis and credibility findings were not compliant with the Regulations and pertinent case law. (Document No. 13 at 4.) With regard to Claimant's radiculitis, she contends that the ALJ failed to consider its severity at any step in the sequential evaluation process, despite the record containing ample evidence that this was Claimant's primary impairment impeding her ability to function. (Id. at 5-6.) The ALJ's omission caused the resultant RFC and decision unsupported by the substantial evidence necessitating remand. (Id. at 6.)

Regarding the pain and credibility analysis, Claimant argues the ALJ failed to abide by the Regulations and controlling law by omitting the evidence relied upon that detracted from Claimant's credibility and only provided conclusory dismissal of her subjective symptoms. (Id. at 7-10.) Claimant asks the Court to remand this matter for further proceedings to correct these errors. (Id. at 10.)

In response, the Commissioner argues that the ALJ expressly considered Claimant's lumbar radiculitis, including the treatment that she had for same, which accompanied Claimant's severe impairment of degenerative disc disease. (Document No. 14 at 8-9.) Claimant's subjective complaints about her radiculitis were found not to preclude her past relevant work as a Medicare benefits specialist, a sedentary occupation, and further, the vocational expert testified that Claimant could change her position frequently as needed to accommodate her radiculitis in performing her past relevant work. (Id. at 9.)

With respect to Claimant's subjective complaints, the Commissioner points out that the ALJ's decision credits her allegations that she has difficulty standing and walking by relegating her to a seated occupation. (Id. at 10.) The Commissioner also asserts that Claimant does not demonstrate what functional limitations the ALJ failed to consider, despite there being no medical source opinion that placed functional limitations beyond the RFC assessment. (Id.) Claimant only received medication management and physical therapy for her back and leg pain, which brought about a 75%-80% reduction in pain, treatment modalities that the ALJ expressly considered. (Id. at 11.) The ALJ also properly recognized that Claimant experienced no significant side effects from her medication. (Id. at 11-12.) Further, the ALJ properly considered Claimant's daily activities did not correspond to the levels of pain she alleged. (Id. at 12.) The medical evidence did not support any additional functional limitations except for those the ALJ provided in the RFC assessment. (Id. at 12-13.) The ALJ adequately and properly accounted for Claimant's subjective complaints. (Id. at 13.)

Finally, the Commissioner requests the Court affirm the final decision because it was reached in compliance with the law and substantial evidence supports it. (Id. at 14.)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Premier Family Physicians:

Since January 2012, Claimant treated with Premier Family Physicians in Chardon, Ohio for her primary care. (Tr. at 282-316.) Records indicate that she had a surgical history of a right knee replacement and left shoulder arthroscopy. (Tr. at 291, 296, 300.) She also had a history of back pain. (Tr. at 268.) In October 2013, it was noted that Claimant retired from her job, became engaged, and was moving to West Virginia for a year to help her fiancé sell his house. (Tr. at 289.) She also helped her daughter move, which caused a "flaring up" of her back pain, however, she reported that the Celebrex was really helping and did not need to take the Percocet as often because of it. (Id.)

Lincoln Primary Care:

In November 2013, after relocating to West Virginia with her new husband, Claimant presented to Lincoln Primary Care to establish herself as a new patient. (Tr. at 395.) She continued to present to this facility for routine follow-up appointments. (Tr. at 399, 404, 408, 415, 446, 496, 515, 520, 530, 641, 646, 653.) Over a 22-month period from January 2014 to October 2015, physical examinations showed that Claimant consistently appeared in no acute distress. (Tr. at 401, 406, 410, 417, 422, 448, 452, 498, 512, 518, 523, 528, 533, 644, 649, 656.) She did have some subjective complaints of tenderness (Tr. at 401, 417, 422, 448, 452, 499, 523, 533, 644, 649.), an unspecified limited range of motion on five occasions (Tr. at 499, 523, 533, 644, 649.), and

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

difficulty ambulating once. (Tr. at 406.) Otherwise, the physical examinations routinely showed: (1) normal muscle tone and strength (Tr. at 401, 406, 410, 417, 422, 448, 452, 499, 513, 518, 523, 528, 533, 644, 649, 656.); (2) no contractures, malalignment, or bony abnormalities (Tr. at 401, 406, 410, 417, 448, 452, 513, 518, 523, 528, 656.); (3) normal movement of all extremities (Tr. at 401, 406, 410, 417, 448, 452, 513, 518, 528, 656.); (4) normal gait and station (Tr. at 401, 410, 417, 422, 448, 452, 499, 513, 518, 523, 528, 533, 644, 649, 656.); (5) intact sensation (Tr. at 401, 406, 410, 417, 448, 452, 499, 513, 518, 523, 528, 533, 644, 649, 656.); and (6) normal reflexes. (Tr. at 422, 499, 513, 518, 523, 528, 533, 644, 649, 656.)

Teays Valley Pain Relief Center ("Teays Valley):

In January 2014, Claimant began treating at Teays Valley for low back pain that radiated into both buttocks and both legs. (Tr. at 369, 380.) She reported upper back pain as well, giving an onset date in 1990 from whiplash due to a motor vehicle accident. (Tr. at 380.) An MRI of Claimant's lumbar spine revealed spinal stenosis, neural foraminal narrowing, facet arthropathy at multiple levels, as well as multilevel disc bulges in the lower thoracic and lumbar spine. (Tr. at 373-374, 366.) Jason Pope, M.D., Claimant's pain management physician, assessed her with lumbar spondylosis without myelopathy, lumbar radiculitis, myofascial spasm, and spinal stenosis; Dr. Pope recommended physical therapy, pharmacotherapy, and interventional therapy, but Claimant stated that she was interested in continuing Topamax because it had markedly improved her leg pain. (Tr. at 366-367, 369-370, 377.) By March 2014, Claimant reported right lower back pain radiating into her right leg although she also complained of upper back pain as well; she rated her pain as 8 out of 10. (Tr. at 472.) She was to continue her current medication regimen. (Id.)

In June 2014, Claimant complained of worsening and persistent pain radiating into right

knee with symptoms aggravated by lying/rest, sitting, standing, walking and no specific position increases the severity of her pain. (Tr. at 468.) Ice, oxycodone, and Topamax provided less relief in the last two weeks; she rated the pain a 9 out of 10. (Tr. at 468-469.) A physical examination revealed that she had a normal gait and appeared in no acute distress; a neuromusculoskeletal examination revealed a negative straight leg raise test, positive Spurling test, and full muscle strength (5/5). (Tr. at 469.) Topamax medication was increased and transforaminal epidural injections were requested. (Id.)

In July 2014, Claimant's physical examination revealed a negative straight leg raise test, negative Spurling test, full muscle strength, intact sensation, symmetric reflexes, and a normal gait. (Tr. at 466.) Claimant rated her pain level at 6 out of 10, with symptoms aggravated by bending, daily activities, standing and walking, though she reported that Topamax provided relief. (Tr. at 465-466.) She stated she tolerated her medication regimen with no difficulty. (Tr. at 466.)

By October 2014, Claimant described the severity of her pain as moderate, but still located in her middle and lower back and radiating to her left hip and buttocks and posterior thigh. (Tr. at 461.) She reported that her symptoms were aggravated by night pain and any prolonged position, but relieved by movement and pain medication. (Id.) Claimant appeared in no acute distress; straight leg raise testing was negative, she had normal muscle strength, intact sensation, symmetric reflexes, and a normal gait. (Tr. at 463.) In November 2014, Claimant underwent epidural steroidal injections (Tr. at 459-460.), and by December 2014, she reported that her back pain improved by 50% and that she could walk more. (Tr. at 455.) She had some upper back pain, but her physical examination remained unchanged. (Tr. at 457.) In January 2015, Claimant underwent two more injections. (Tr. at 454, 495.)

In March 2015, a straight leg raise test was positive on the right. (Tr. at 493.) At her next visit in April 2015, the straight leg raise test was negative and the remainder of Claimant's examination revealed she was in no acute distress, had a normal gait, full muscle strength, intact sensation, and symmetric deep tendon reflexes. (Tr. at 489.) Because previous injections, pain medication, and physical therapy provided no relief, a request was made for a trial of a lumbar spinal cord stimulator. (Tr. at 489.) On September 8, 2015, Claimant underwent the spinal cord stimulator trial without complication. (Tr. at 553-554.) At the next visit on September 11, 2015, Claimant reported a 75% to 80% reduction in her back and leg pain. (Tr. at 631.) She appeared in no acute distress, but had some tenderness and only "mild" pain with range of motion testing. (Tr. at 633.) Her gait was normal and straight leg raise tests were negative; she had intact sensation and symmetric deep tendon reflexes. (Id.) Given Claimant's positive results from the trial spinal cord stimulator, the doctor ordered a permanent spinal cord stimulator. (Id.) On November 17, 2015, Claimant underwent a permanent spinal cord stimulator placement without complication. (Tr. at 660-661.)

State Agency Medical Consultant:

In April 2014, Fulvio Franyutti, M.D. reviewed the available evidence of record and affirmed the opinion that Claimant could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; could occasionally climb ramps/stairs, but could never climb ladders/ropes/scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; needed to avoid concentrated exposure to extreme temperatures, noise, and vibration; and needed to avoid even moderate exposure to hazards. (Tr. at 90-92.) Dr. Franyutti also affirmed the opinion that

Claimant could perform her past relevant work as a MDS Nurse. (Tr. at 93.)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that the primary impairment that affected her on a daily basis was back pain. (Tr. at 39.) She stated that her pain gradually got worse in the last ten months and that it radiated down her right leg into her knee. (Tr. at 43-44.) Claimant said she could carry no more than 10 pounds (Tr. at 42.) and could not walk a block. (Tr. at 43.) She also said that she could only stand 10-15 minutes and sit for about 30 minutes. (Tr. at 45.) Claimant also stated that she had pain with her right shoulder that makes it difficult to lift with it and that she drops things a lot. (Tr. at 46-47.) Though she experiences popping and cracking in her right knee since replacement surgery in 2010, she did not have pain, but testified that her left knee is in constant pain. (Tr. at 47-48.) She has a cane, but at the time, was not using it that often. (Tr. at 49.)

Claimant testified that she has a CPAP for her sleep apnea, but throws off the mask during the night. (Id.) She is drowsy and sleepy all the time during the day. (Tr. at 50.)

Claimant takes three different medicines for depression and stated that when she takes her medicine, she is okay, but if she misses a dose, she has "a really, really bad day." (Tr. at 51.) She testified that she did not experience side effects from any of her medications. (Id.)

Claimant testified that she is forgetful, her husband reminds her constantly to take her medication. (Tr. at 52.) Her husband will carry laundry up or down the stairs for her, and she folds and puts the clothes away. (Id.) Claimant stated that she sweeps the floors, but will take breaks because it bothers her back. (Id.) Her physical conditions do not affect her ability to take care of her personal needs, although she needs her husband's help to get in and out of the bathtub; she can

take showers. (Tr. at 53.) She prepares mostly microwave meals, goes shopping at the grocery store once every week or every two weeks, goes to church sometimes twice a week, and enjoys painting. (Tr. at 52-53.)

Patricia Posey, Vocational Expert ("VE") Testimony:

The VE characterized Claimant's past relevant work as an MDS nurse as it is generally performed as sedentary, but as Claimant performed it, as light depending upon the client or resident Claimant would have been assessing at the time. (Tr. at 56-57.) When given a hypothetical question of an individual with Claimant's age, education and work history, and who can lift twenty pounds occasionally, ten pounds frequently, stand and walk six hours in an eight-hour day, sit at least six hours in an eight-hour day, occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl and should only have occasional exposure to extreme temperatures, vibrations, loud noise, and hazards, the VE testified that the individual could perform sedentary work of the MDS nurse position, as well as at the light exertional level as performed pursuant to Claimant's testimony. (Tr. at 57-58, 62.)

In response to questioning from Claimant's attorney, the VE explained that she characterized Claimant's past relevant work as an MDS nurse as light because she was potentially on her feet, even though she was not on her feet more than two hours a day. (Tr. at 62, 63-64.) The VE affirmed that Claimant could perform her past relevant work as an MDS nurse, as it is generally performed in the national economy and as Claimant performed it. (Tr. at 62.) Additionally, the VE testified that if the hypothetical individual needed the option to sit or stand as needed, that the MDS job would be available. (Tr. at 64.) However, given the additional hypothetical of the individual being preoccupied with pain where she could no longer perform that type of skilled

work, leaving only skilled or semi-skilled work, the VE testified that the individual could not perform the past work. (Id.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

Analysis

The Omission of Radiculitis:

As stated supra, Claimant asserted that the ALJ's failure to evaluate the severity of her radiculitis at any step in the sequential process is an error worthy of remand. (Document No. 13 at 4-6.) There is no dispute that Claimant had been diagnosed with radiculitis, and Claimant argued

this case is distinguishable from this Court's previous decision in <u>Lewis v. Astrue</u>, 937 F.Supp.2d 809 (S.D.W. Va. 2013) because in the case at bar, at no time did the ALJ evaluate the effects of Claimant's radiculitis in formulating the RFC. (<u>Id</u>. at 6.) An ALJ is to consider any functional limitations resulting from a claimant's medically determinable impairments, and any related symptoms, including pain, from both severe and non-severe impairments. 20 C.F.R. § 404.1545. Of interest in this case is that the ALJ did not find Claimant's radiculitis as either a severe or non-severe impairment, and only mentioned the term "lumbar radiculitis" once in the written decision. (Tr. at 24.) Nevertheless, the ALJ discussed at length Claimant's ongoing complaints of pain, and from the outset, the ALJ acknowledged Claimant's testimony that she was unable to work "due to back pain that radiates into her right leg and travels to her knee." (Tr. at 23.) Furthermore, the ALJ noted "that she currently experiences symptoms of constant pain in her left knee as well as occasional pain in her right knee." (Tr. at 23.) The question presented then is whether the ALJ properly considered Claimant's radiculitis[4], or back pain that radiated into her lower extremity or extremities.

A "severe" impairment is one "which significantly limits your physical or mental ability to do basic work activities." <u>See</u> 20 C.F.R. § 404.1520(c); <u>see also</u> <u>Id</u>. § 404.1521(a). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." <u>Id</u>. § 404.1521(b). The Regulations provide examples of these activities: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and

---

[4] "Radiculitis refers to pain that radiates along the nerve caused by inflammation at the root of its connection to the spinal column." See, http://www.atlanticspinecenter.com/conditions/radiculitis/

(6) dealing with changes in a routine work setting. Id. Contrariwise, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ referenced numerous examples from the medical record concerning Claimant's pain: (1) she treated at Premier Family Physicians since January 2012 for back and right knee pain; (2) she was diagnosed with osteoarthritis of the right knee and lumbar degenerative disc disease; (3) she reported a flare up of back pain when she helped her daughter move in October 2013; (4) in August and September 2006, X-rays and MRIs confirmed lumbar disc disease, and a June 2011 MRI again confirmed lumbar spine multilevel spondylitic changes and multilevel disc bulging; (5) Claimant was referred to the Cleveland Back and Spine Center in January 2013 for treatment of her back pain where she "was prescribed medications that allowed her to perform activities of daily living through at least October 25, 2013"; (6) November 2013 records from Lincoln Primary Care revealed Claimant walked with an irregular gait, had sensation deficits, and had abnormal lower extremity motor strength, resulting in diagnoses of neuropathy and lumbago with sciatica; and (7) from January 2014 through December 2014, Teays Valley Hospital Pain Relief Center records consistently show Claimant complained of leg and back pain, despite prescribed medication and injections. (Tr. at 23-24.)

The ALJ continued her discussion of Claimant's medical history of back and lower extremity pain, noting that on September 8, 2015 Claimant underwent a trial spinal cord stimulator placement as a result of her "diagnosed low back pain, lumbar radiculitis, lower extremity causalgia,

and chronic pain syndrome. She followed up with her primary care provider on October 23, 2015, and musculoskeletal findings were normal." (Tr. at 24.) The ALJ recalled that Claimant testified that a permanent stimulator would be placed in the near future. (Id.)

The aforementioned has more similarities than differences to the holding in Lewis v. Astrue as opposed to Claimant's contention otherwise: in Lewis, the ALJ excluded the claimant's diagnoses of bipolar disorder, panic attacks, and personality disorder as severe mental impairments at step two, but instead only found depressive disorder and anxiety disorder as severe mental impairments. However, because the ALJ acknowledged these omitted impairments and their limitations in discussing the treatment notes in formulating the RFC, this Court found the error was harmless. 937 F.Supp.2d at 819. In this case, though the ALJ expressly mentions "radiculitis" only once, the majority of the discussion pertaining to Claimant's medical records in support of the RFC assessment concerned her ongoing treatment for her back and lower extremities pain. As stated *supra*, the primary reason Claimant asserted her inability to work was due to back pain radiating into her right leg and knee; this case is mostly premised upon Claimant's back pain (Tr. at 23, 39, 64.) From this perspective, the ALJ did not ignore Claimant's radiculitis, but addressed this impairment in more general terms of "pain" predominately in Claimant's back and lower extremities, which is the foundation of Claimant's application for benefits. Moreover, even assuming *arguendo* that the ALJ committed error by failing to expressly determine whether "radiculitis" was a severe or non-severe impairment at step two, the ALJ's consideration of the symptomatology of this impairment in the next steps of the sequential evaluation process remains unchanged, and would therefore have reached the same result, notwithstanding the error. See, Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

Accordingly, the undersigned, **FINDS** the ALJ's omission of the term "radiculitis" in the second step of the sequential evaluation process was not reversible error because the ALJ actually discussed Claimant's symptoms of pain associated therewith at length in formulating her RFC, compliance with the Regulations and pertinent case law.

Evaluating Credibility and Pain:

Claimant's next argument concerns her assertion that the ALJ failed to follow the requirements under 20 C.F.R. § 404.1529, SSR 96-7p, and SSR 96-4p in evaluating Claimant's credibility regarding her subjective complaints, resulting in a flawed RFC assessment. (Document No. 13 at 8.) Social Security Ruling 96-7p[5] clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. See, also, Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and

---

[5] The undersigned is aware that this Ruling has been superseded by SSR 16-3p, effective March 28, 2016, however, the former Ruling applies to the ALJ's decision herein, having been issued on December 28, 2015. See, SSR 16-3p, 2016 WL 1131509.

from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

As an initial matter, it is well known that credibility determinations are properly within the province of the adjudicator and beyond the scope of judicial review. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Davis v. Colvin, 3:13-CV-23399, 2015 WL 5686896, at *7 (S.D.W. Va. Sept. 8, 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.") Claimant argues that the ALJ's credibility rationale was unfair for several reasons: first, she characterized Claimant's treatment as "essentially conservative" (Tr. at 24.) despite numerous instances in the record showing Claimant received epidural injections as well as a trial spinal cord stimulator placement; second, the ALJ found nothing in the record indicated Claimant's medication caused any significant side effects, although Claimant reported they caused insomnia, drowsiness, and dizziness in her Function Report and Personal Pain Questionnaire (Tr. at 195, 217-218.); third, the ALJ gave no explanation why Claimant's reporting daily activities detracted from her credibility; and finally, the ALJ misstated the evidence and wholly failed to recognize that Claimant indicated her impairments prevented her from performing household chores without taking breaks or having physical assistance.

After properly performing the two-step process[6], the ALJ proceeded to review the evidence of record and reconciled it with Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms, starting with the "essentially conservative treatment that was

---

[6] See, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

generally successful in controlling her alleged symptoms." (Tr. at 24.) The ALJ noted Claimant "reported improvement in symptoms with medications, physical therapy, and injections"[7] which provided Claimant some relief of her painful symptoms until September 2015 when she had to undergo a trial spinal cord stimulator. (Id.) The ALJ also noted that Claimant testified that she would have a permanent stimulator placed soon, which occurred after the hearing, on November 17, 2015. (Tr. at 41, 659-662.) The undersigned agrees with Claimant insofar as the trial spinal cord stimulator placement was not a traditional conservative treatment method, as opposed to pain medications and physical therapy. However, the ALJ's summary that Claimant's pain treatment was "generally successful" is corroborated by Claimant's testimony, *supra*, as well as the medical records she noted in her decision; that is, until conservative treatment became ineffective in managing her pain, thus necessitating the permanent spinal cord stimulator placement: (1) Claimant "reported some relief with cortisone injections" to Kraig K. Solar, D.O. for her right knee pain[8] (Tr. at 20, 278.); (2) "[o]n February 18, 2014, Claimant reported that prescribed medications helped control her symptoms of leg pain, but that she continued to experience low back pain" (Tr. at 24, 405.); (3) Claimant attended physical therapy between April 15, 2014 and May 13, 2014 at

[7] The undersigned notes that the ALJ referenced "Exhibits 8F, 9F, 17F, 20F, 21F, 22F, 25F, 27F, 28F, 31F, 32F, 33F, and 34F" which pursuant to the Court Transcript Index, correspond with the following medical records, respectively: the office treatment records dated January 27, 2012 to October 14, 2013 from Premier Family Physicians; the office treatment records dated January 2, 2013 to October 25, 2013 from Cleveland Back & Spine; the office treatment records dated January 14, 2014 to January 28, 2014 from CAMC Teays Valley Pain Relief Center; the office treatment records dated November 6, 2013 to March 18, 2014 from The Center for Pain; the office treatment records from January 9, 2014 to August 12, 2014 from Lincoln Primary Care; the office treatment records dated January 14, 2014 to January 9, 2015 from CAMC Teays Valley Hospital; the office treatment records dated September 17, 2014 to April 20, 2015 from Lincoln Primary Care Center; outpatient hospital records dated September 8, 2015 from CAMC Teays Valley Hospital; physical/occupational therapy records dated January 15, 2014 to October 2, 2014 from Boone Memorial Physical Therapy; the office treatment records dated September 11, 2015 from CAMC Teays Valley Hospital – Pain Relief Center; the office treatment records dated June 9, 2015 from Kay Collins-Ballina, M.A.; the office treatment records dated June 24, 2015 to August 24, 2015 from Lincoln Primary Care; and the office treatment records dated October 23, 2015 from Lincoln Primary. (Tr. at 282-316, 317-335, 361-384, 393-414, 415-453, 454-483, 496-542, 553-554, 555-602, 630-634, 635-639, 640-651, 652-658, respectively.)
[8] The undersigned notes this record is dated October 27, 2011.

Boone Memorial Hospital and "she reported no symptoms of right shoulder or neck pain at the end of treatment" (Tr. at 20, 602.); (4) Claimant returned to physical therapy beginning September 3, 2014 through October 8, 2014 and "reported 100 percent improvement in her pain symptoms" (Tr. at 20, 579.); and (5) after receiving injections in 2014, a follow up on December 17, 2014 indicated Claimant "reported 50 percent relief of symptoms" (Tr. at 24, 455.) From the aforementioned, the undersigned **FINDS** that ALJ's characterization that Claimant's pain treatment over time as "generally successful" was not erroneous, but is supported by substantial evidence.

With regard to the ALJ's finding that the record contains "nothing" to indicate Claimant's medications caused any "significant" side effects, despite Claimant's allegations contained in forms submitted to the SSA, Claimant denied having any side effects from her medications at the administrative hearing:

Q:      Now, do you have any side effects of any of your medications?

A:      Not, I mean, not that I'm aware of other than like I said, if I miss any of them, I'm not good.

(Tr. at 51.) As mentioned above, the ALJ referenced numerous medical records in her discussion of Claimant's "generally successful", "essentially conservative treatment" that the undersigned reviewed as well, and did not see any report by Claimant to her physicians that she had the negative side effects of her medications that she alleged in her SSA forms. Indeed, during the office visit on October 14, 2013 following her retirement and impending move to West Virginia, she denied any side effects from her medications (Tr. at 289.), and in nearly every single office visit, Claimant's medications were simply refilled, increased, or changed, not due to reported side

effects, but because of Claimant's report that they no longer worked in controlling her pain and other symptoms.[9] Moreover, when Claimant was referred to Kay Collins-Ballina, M.A. for a psychological evaluation for the proposed implant of the spinal cord stimulator, Ms. Collins-Ballina noted Claimant's "desire to have a reduction in her current level of pain", and opined that with respect to her mental health Claimant "should continue with her current medications as they appear to be providing benefit." (Tr. at 639.) The ALJ noted Claimant's complaints of "fatigue", "feel[ing] sleepy all the time", and poor sleep (Tr. at 19, 20, 21, 23.), however, these symptoms were associated with Claimant's diagnoses of sleep apnea/narcolepsy and with her use of a CPAP machine per her testimony. (Tr. at 23, 49-50.)

Claimed side effects of medication never discussed with a physician or where a claimant did not request a change of medication due to side effects, supports an ALJ's decision to discount such a complaint provided for the first time at the hearing. Richmond v. Shalala, 23 F.3d 1441, 1443 (8th Cir. 1994). Though Claimant alleged in her application forms that her medications caused her "insomnia", "drowsiness" and "dizziness", she denied having side effects at the hearing, which was also corroborated by the medical evidence of record. (Tr. at 195, 217, 218, 228.) Ultimately, the ALJ's finding that "[t]here is nothing in the record to indicate any *significant* side effects of medications" was not erroneous. (Tr. at 24.) (*italics* supplied) For this Court to find otherwise, would be to engage in re-weighing of the conflicting evidence and substitute its judgment for the ALJ's. See, Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the undersigned **FINDS**

---

[9] What is notable about the medical records from Lincoln Primary Care from November 2013 through April 2014 is that Claimant consistently denied dizziness (Tr. at 396-397, 400, 402, 406, 407, 410, 411, 434, 436, 440, 441, 444, 445, 448, 449.), despite claiming dizziness as a side effect from medication in her forms submitted to the SSA, which are dated December 4, 2013 and March 23, 2014. Also notable is a treatment record dated April 18, 2014 that Claimant reported "doing ok" and that "she has lost 16 lbs due to some increased exercise." (Tr. at 447.)

the ALJ's determination that "nothing in the record" indicated Claimant suffered from "any significant side effects of medications" is supported by substantial evidence.

The ALJ's discussion of Claimant's allegations of pain and other symptoms, along with her own admissions of her daily activities, is illustrative that the ALJ reviewed the factors promulgated under 20 C.F.R. § 404.1529(c). In addition to the objective medical evidence discussed above, the ALJ compared Claimant's subjective complaints with the treatments she received for her pain symptoms, as well as her daily activities in order to assess Claimant's credibility: "In October 2013, just after she retired, the claimant reported increased symptoms of back pain associated with helping her daughter move. She has alleged some independence with personal care activities as well as the ability to prepare meals and perform household chores." (Tr. at 24.) Earlier in her decision, the ALJ noted that Claimant "testified that she had limitations in her activities of daily living primarily due to her physical conditions and her complaints of pain." (Tr. at 21.) The ALJ then contrasted this with Claimant's testimony that she also prepared simple meals and performed household chores including laundry and cleaning, vacuuming, and making the bed with assistance. (Tr. at 21, 188-199, 388.)[10] Dr. Franyutti's as well as Dr. Frank Roman's opinions were also considered by the ALJ in light of this other evidence of record, neither of whom found Claimant was disabled, with Dr. Franyutti further finding that Claimant was capable of light work, and Drs. Roman and James Bartee both opining that Claimant had only mild restriction of activities of daily living. (Tr. at 24-25.) In short, the undersigned **FINDS** that the ALJ adequately addressed her reasoning for her findings with respect to Claimant's activities of daily living.

---

[10] The undersigned notes that the ALJ referenced Claimant's statements made in her Function Report and to the consultative psychological examiner.

With respect to Claimant's contention that the ALJ "misstated the evidence and wholly failed to recognize that [Claimant] actually had indicated her impairments prevented her from performing household chores without taking significant rest breaks or having physical assistance" (Document No. 13 at 9.), as mentioned *supra*, the ALJ actually <u>did</u> recognize that Claimant testified that she performed household chores including laundry and cleaning, vacuuming, and making the bed ***with*** assistance. (Tr. at 21, 188-199, 388.) (*italics* supplied) The undersigned notes that there was no other evidence in the record beyond Claimant's own subjective complaints that supported any further functional limitations as detailed in the RFC. Moreover, there was no evidence from a treating, examining or consulting physician or other expert who opined that Claimant required additional functional limitations beyond the RFC. Perhaps most importantly, the State agency medical opinion evidence and the vocational expert testimonial evidence were consistent insofar as Claimant remained capable of performing her past relevant work as an MDS Nurse. (Tr. at 25, 93.) This evidence is only rebutted by Claimant's subjective complaints. In short, Claimant did not satisfy a *prima facie* case of disability beyond step four of the sequential evaluation process, therefore, at no time did the burden shift to the ALJ. <u>See</u>, <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981); <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983). Accordingly, the undersigned **FINDS** the ALJ's pain analysis and credibility findings were compliant with the Regulations and pertinent case law.

In summation, the undersigned **FINDS** ALJ's decision finding Claimant was not disabled is based upon substantial evidence.

## <u>Recommendations for Disposition</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for Judgment on the Pleadings (Document No. 13.), **GRANT** the Defendant's request to affirm the decision below (Document No. 14.), and **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 25, 2017.

Omar J. Aboulhosn
United States Magistrate Judge